STATE, Respondent, vs. RESLER, Appellant.

*September 19—October 7, 1952.*

*Howard A. Tilg,* attorney, and *Howard A. Morse* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and *Benjamin R. Runkel,* district attorney of Ozaukee county, and oral argument by *Mr. Platz* and *Mr. Runkel.*

MARTIN, J.    Several questions are raised on this appeal. We will consider first defendant's contention that it was error to admit in evidence the testimony of Walter Knauer, the truck driver, as to the speed of the car and the manner in which it was driven at a point a mile and a half or more from the place of the accident.

Cases cited by defendant present facts which are not similar to those of the instant case. Knauer testified as to his own speed, the lights on defendant's car, and made an estimate

of defendant's speed at the time he passed him. If this were all, cases relied upon by defendant might be in point. However, Knauer further testified that he continued along at the same rate of speed for about one and a half or two miles to the scene of the accident and that when he arrived there defendant was on the road flagging him down. It is reasonable to infer from this that defendant must have continued on at the approximate speed that he passed the truck, because he got to the point of the accident, went off the road, got out of his car, and walked back to the highway where he flagged the truck down—all within the time that the truck followed him for a mile and a half or two miles at a speed of forty to forty-five miles per hour. Knauer's testimony therefore becomes material and has probative force.

It is also contended that in order to prove defendant guilty of negligent homicide under sec. 340.271 (1), Stats.:

"Any person who by operation of any vehicle while under the influence of alcoholic beverages or narcotic drugs shall cause the death of another shall be deemed guilty of negligent homicide . . ."

some causal connection must be shown to exist between defendant's operation of his automobile and the death, and that the state must also show that his operation of the vehicle was so affected by his intoxication that it resulted in the death.

There is ample evidence that the death was caused by defendant's operation of the automobile. In the first place, defendant admitted driving the vehicle. He also admitted driving without lights and that he did not observe the turn in the road until he went off on the shoulder. It is a fair conclusion from the physical facts—the skid marks testified to by the police officer—that defendant's efforts to get the car back onto the highway caused it to go off into the field where it tipped over and crushed the passenger, causing his death.

If it can also be shown that defendant was intoxicated when he so operated his vehicle, it must be assumed that there existed a causal connection between the intoxication and the death. *Tomasik v. Lanferman* (1931), 206 Wis. 94, 238 N. W. 857. As pointed out by the attorney general, to require that facts be shown to prove that defendant's operation of the car was so affected by his intoxication that the accident would not have happened if he had been sober, would be to impose an impossible burden upon the state in the prosecution of such a case.

Defendant also contends that the procurement by the doctor of the evidence as to the alcoholic content of his urine constituted an unreasonable search and seizure. We see no merit in this contention. The record shows that the defendant knew the purpose for which the sample was intended to be used, and voluntarily submitted to the tests.

The important question raised by defendant is the application of sec. 85.13 (2), Stats. The first sentence of that statute provides:

"Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person arrested for operating a motor vehicle while under the influence of intoxicants, the court may admit evidence of the amount of alcohol in the defendant's blood taken within two hours of the time of the arrest, as shown by a medical or chemical analysis of such defendant's breath, blood, urine, or saliva. . . ."

The language contained in this sentence is clear and unambiguous, and no judicial rule of construction is permissible. We must arrive at the intention of the legislature by giving the words their ordinary and accepted meaning. 59 C. J., Statutes, pp. 1129, 1130, sec. 669. See *State ex rel. Husting v. Board of State Canvassers* (1914), 159 Wis. 216, 150 N. W. 542.

In providing that the court may admit evidence of the test taken within two hours of the time of arrest, the legislature could mean only one thing—that the test must be taken within two hours before or two hours after the arrest. This might well be intended for the protection of the defendant. At least, this is in the nature of a criminal statute and must be strictly construed against the state. It may be that the legislature did not have full confidence in the accuracy and reliability of these tests. It may be that in order to protect the defendant, and perhaps as a spur to enforcement officers, it provided that the defendant must be arrested within two hours of the taking of the test, if the state expected to rely upon the test.

The result so read out of the statute is not so absurd as to indicate that the statute does not mean what it says. There must have been a reason for the legislature's use of the words. We agree with counsel that the relation of the time of the accident or offense to the time when the test is taken is relevant, and the statute might accomplish more if some language designating the time of the accident or offense were substituted for the word "arrest." But the legislature did not see fit to do that, and we must decide what it meant by what it said.

As stated in *State v. Retail Gasoline Dealers Asso.* (1950), 256 Wis. 537, 544, 41 N. W. (2d) 637:

"It is urged that where 'shall' appears it should be converted to 'may' by judicial construction. The argument is that if the literal construction leads to absurd, unreasonable, or unjust results a construction not subject to such infirmities will be adopted in order to carry out the true purpose and intent of the legislature. We do not question the statement of principle; only its application. We find no obscurity in the sections referred to. The words and meaning are plain and explicit. Whether or not dissolution is too severe a penalty to impose on a corporation which engages in a con-

spiracy to fix prices only the legislature can say. It depends on how serious the legislature thought the offense is and what means it thought would be an effective deterrent and appropriate punishment. There is no indication, which we have been able to discover, that the legislature considered the offense to be trivial. We cannot say that the penalty provided is unjust or unreasonable or that a literal interpretation of 'shall' produces any result so absurd or incongruous that we must assume the legislature by oversight or mistake failed to express its will."

It is pointed out by the state that scientific evidence of intoxication was admissible before the enactment of the statute, *Kuroske v. Aetna Life Ins. Co.* (1940), 234 Wis. 394, 291 N. W. 384, 127 A. L. R. 1505, but that the testimony of expert witnesses was required to interpret such tests. It contends that the purpose of the statute was to enact into rules of law the considered judgment of all the experts and thus make it unnecessary to produce expert testimony in each case because the statute interprets the results of such tests. Its contention is that the first sentence of sec. 85.13 (2), Stats., is merely introductory or explanatory of the balance of the section, which reads as follows:

". . . For the purposes of this section: (a) Evidence that there was, at the time, five hundredths of one per cent or less, by weight of alcohol in his blood, is *prima facie* evidence that the defendant was not in an intoxicated condition; (b) evidence that there was, at the time, more than five hundredths of one per cent and less than fifteen hundredths of one per cent by weight of alcohol in his blood is relevant evidence, but it is not to be given *prima facie* effect in determining whether or not the defendant was in an intoxicated condition; (c) evidence that there was, at the time, fifteen hundredths of one per cent or more, by weight of alcohol in his blood, shall be admitted as *prima facie* evidence that the defendant was in an intoxicated condition, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the defendant guilty of being under the influence of intoxicants."

To accept the construction that the state would have us use would be to give the first sentence of the section no meaning at all, which is to treat it as surplusage. This we cannot do. We believe that the first sentence is a limitation of the common law. Under the common law it was permissible to introduce the evidence of the tests voluntarily submitted to as an admission against interest. However, when the statute sets out the conditions under which the test may be received in evidence, we are satisfied that the legislature intended to modify the common law.

"If an affirmative statute, which is introductory of a new law, direct a thing to be done in a certain manner, that thing shall not, even though there are no negative words, be done in any other manner, the mode prescribed by statute for the exercise of a power, must be adopted. In some cases, a strict, and even literal, compliance is required. This is particularly true in regard to enactments modifying the course of the common law." 50 Am. Jur., Statutes, p. 40, sec. 19.

The admission of medical testimony as to the result of the urinalysis test was contrary to the provisions of sec. 85.13 (2), Stats., and prejudicial to the defendant. The motion to suppress the evidence should have been granted. A new trial is necessary.

In the new trial, if the two counts are submitted to the jury, (1) whether defendant operated a motor vehicle while under the influence of liquor, causing the death, and (2) whether defendant operated a motor vehicle in such a reckless and negligent manner as to cause the death—the court should instruct the jury that if it finds defendant guilty on the first count, it should make no finding on the second, and if it finds him guilty on the second count, it should make no finding on the first.

*By the Court.*—Judgment reversed and cause remanded for a new trial.