CHARLES VORE, JR., PLAINTIFF IN ERROR, V. STATE OF
NEBRASKA, DEFENDANT IN ERROR.
62 N W. 2d 141

Filed February 26, 1954. No. 33438.

*Warren C. Schrempp, David S. Lathrop,* and *L. W. Powers,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Bert L. Overcash,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

Defendant was charged and convicted of the offense of motor vehicle homicide. He brings the case here for review.

The defendant was 21 years of age at the time of the trial. He was employed as a truck driver at $35 per week at the time the alleged offense was committed. He was a resident of Denison, Iowa, and appears to

have had a good reputation as a law-abiding citizen prior to the happening of the events hereinafter set forth.

The record shows that on May 4, 1952, the defendant came to Council Bluffs, Iowa, to attend the stock car races. He was accompanied by Joseph Smith, Ronald J. Pruter, Vern Carstensen, and Mert Brockman. They came in an automobile owned by Pruter. They had a case of 3.2 beer in the car when they left home. Defendant admits drinking three or four cans of beer prior to 4 p. m. After the races were over they decided to drive to Fremont, Nebraska, to visit a friend who had formerly lived in Denison. On arrival in Fremont they found their friend was not at home. They started home, and a few miles outside of Fremont they overtook a car being driven by one Paul Scadden and in which Delores Luce was riding. The defendant was driving at the time. While driving at a high rate of speed defendant hit the Scadden car with great force, causing it to leave the highway and turn over. Delores Luce was instantly killed, the evidence showing that she was decapitated as a result of the force of the impact. Insufficiency of the evidence to sustain a verdict is not assigned as error, nor is the sentence claimed to be excessive.

The defendant contends that the trial court erred in not granting a continuance, in not requiring the county to pay the expense of compulsory process or the cost of taking depositions, and in admitting certain evidence of a medical expert offered by the State and the correctness of the instructions with respect thereto. We shall deal with these assignments in the order in which we have stated them.

It appears from the evidence that at the time of the accident defendant was accompanied by four young men who were subsequently inducted into the armed forces. None of them was present for the trial, and defendant moved for a continuance for this reason. The accident

occurred on May 4, 1952. The record does not show the date that the complaint was filed, but a preliminary hearing was had in August 1952. On August 28, 1952, the information was filed in the district court. Defendant was arraigned on January 30, 1953. On March 10, 1953, the trial was definitely set for April 13, 1953. The affidavits filed in support of the motion for a continuance state that the four young men accompanying him were eye witnesses, but it is nowhere stated what they would testify to if they were present. The addresses of three of them were known to the defendant long before the trial. Defendant had counsel representing him from the beginning of the litigation. Ray Carstensen testified that he is the father of Vern Carstensen and that the latter at the time of trial was located at Camp Roberts, California. He stated that Vern was inducted into the service on February 9, 1953, 9 months after the accident of May 4, 1952. Horace Smith testified that he is the father of Joseph Smith and that the latter was located with the American Armed Forces in Austria at the time of the trial. He testified that Joseph was inducted into service on May 7, 1952, and that he was home on furlough in the fall of 1952, probably in October of that year.

The evidence shows a complete want of diligence in obtaining the evidence of these eye witnesses to the accident. It was known that the young men riding with defendant were about to go into service, but nothing was done at that time about obtaining their evidence for use at the trial. One of them was home on furlough after the information was filed and nothing was done at that time to obtain his evidence for use at the trial. The affidavits in support of the motion for a continuance do not state what these witnesses would testify to, or even that their evidence would be material other than the conclusion of counsel for the defendant to that effect. The defendant had from May 4, 1952, to April 14, 1953, to obtain the testimony of these witnesses.

Even if the materiality of the evidence had been shown, which it is not, the want of diligence is so great as to warrant the denial of a continuance. No abuse of discretion on the part of the trial court is shown by the record.

The general rule governing the right to a continuance is stated in Dolen v. State, 148 Neb. 317, 27 N. W. 2d 264, as follows: "Generally this court has held that 'An application for a continuance is addressed to the sound discretion of the trial court and its ruling thereon will not be held erroneous, unless an abuse of discretion is disclosed by the record.'"

The defendant contends, however, that the trial court erred in failing to enter an order for compulsory process for his witnesses and for an advance appropriation of 10 cents per mile and $5 per day for each witness payable out of the funds of the county. In Hewerkle v. Gage County, 14 Neb. 18, 14 N. W. 549, in dealing with this very question, the court said: "But it cannot be claimed, upon any reasonable construction of the language of the constitutional provision in question, that it was the intention of its framers to make it the duty of the legislature to provide for the payment of defendants' witnesses in such cases, and, however that may be, they certainly have never done it." See, also, Worthen v. Johnson County, 62 Neb. 754, 87 N. W. 909.

In Fanton v. State, 50 Neb. 351, 69 N. W. 953, 36 L. R. A. 158, it was clearly stated that "'The right to compulsory process for witnesses does not and cannot extend to nonresident witnesses.'"

The defendant contends that these cases are no longer the law because of the enactment in 1937 of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, which is now sections 29-1906 to 29-1911, R. R. S. 1943, inclusive. Section 29-1908, R. R. S. 1943, makes no provision for the advancement of mileage and per diem to a defense witness from another state. The liability of a county for the per diem

and mileage of defendant's witnesses in a prosecution for a felony must arise by some express provision of a statute, and not by implication. Worthen v. Johnson County, *supra*.

In State v. Fouquette, 67 Nev. 505, 221 P. 2d 404, a recent case arising under the uniform act now before us, the court said: "Certainly this statute does not entitle a defendant to have witnesses brought into court at public expense. (citing cases). * * * Although no case directly in point has been found, it is clear that this statute, providing, as it does, that specified sums for fees and mileage shall be paid or tendered to nonresident witnesses summoned to attend and testify in criminal prosecutions in this state, but not providing, either expressly or by implication, that such witnesses summoned on behalf of the defendant shall be brought in without expense to him, does not confer upon the courts of this state authority to procure the attendance and testimony of witnesses from without the state for the defendant in any case at the expense of the public."

The defendant complains that the trial court erred in denying a motion to take depositions at county expense about 1 week before the trial. Defendant relies on section 29-1904, R. R. S. 1943. But this statute does not provide for the taking of depositions at county expense in advance of the trial. Defendant was entitled to an order entitling him to take the depositions of witnesses, but when he coupled with it a demand that it be done at the expense of the county, he was not entitled to have his motion sustained. "A motion may properly be overruled which cannot be allowed in substantially the same terms as requested." Weideman v. Estate of Peterson, 129 Neb. 74, 261 N. W. 150.

We conclude that the trial court did not abuse its discretion in denying a continuance to the defendant. The trial court was also correct in denying compulsory process for defendant's witnesses when coupled with a request that the county be ordered to pay the cost there-

of in advance. The order of the trial court was likewise correct in denying defendant the right to take the depositions of witnesses when it was coupled with a request that the county be required to advance funds for this purpose prior to the trial.

The defendant objected to certain evidence of Dr. Victor E. Levine offered by the State. Dr. Levine was shown to be the head of the department of biological chemistry at the Creighton Medical School at Omaha. He holds degrees as Doctor of Medicine and Doctor of Philosophy in biological chemistry. He was qualified under the requirements of the Department of Health to analyze blood for alcoholic content. He had experience in such work in the army during World War II and since that time had run numerous tests for the Omaha police department and the Nebraska Safety Patrol. The defendant stipulated that Dr. Levine was a qualified medical and biochemical expert. Dr. Levine testified that he had received a sample of blood drawn from the person of the defendant some 15 hours thereafter. No preservative was added until it was received by him. A test was run on the blood sample showing 0.11 percent alcoholic content. It was the testimony of Dr. Levine that blood drawn from a living person is alive and that it continues to use up alcohol unless the blood cells are killed by the addition of a preservative to accomplish that purpose. Dr. Levine gave it as his opinion that the blood of this defendant which tested 0.11 percent after 15 hours would necessarily have tested 0.18 or 0.19 percent alcoholic content at the time the blood was drawn. The reasons and calculations leading to this conclusion were fully testified to by the witness.

The defendant produced Dr. Fred L. Humoller who was a Doctor of Philosophy in biochemistry and for the last 5 years has been in the department of pharmacology and physiology at the University of Nebraska Medical School at Omaha. The evidence of Dr. Humoller is that drawn blood does not use up alcohol in any appreciable

amount during the first 24 hours thereafter. His evidence is that losses occur while the blood is in the body due to the action of the kidneys and liver, but that no such reduction takes place in drawn blood except by the action of bacteria. He states that preservatives are added to prevent the growth of bacteria and the action of other elements which might even produce alcohol and add to the alcoholic content of the blood.

The evidence of these two witnesses is in conflict and, if properly admitted, presents a question for the jury. The evidence was undoubtedly admissible as tending to show that defendant was or was not intoxicated at and immediately following the accident. The question here raised is whether the evidence was sufficient for the court to instruct on the presumption of intoxication in accordance with section 39-727.01, R. R. S. 1943.

No objection was made that a preliminary foundation had not been laid for the admission of the result of the test into evidence. Remoteness as to time in making the test does not appear important in view of the evidence that the longer the test was delayed, in the absence of a preservative, the more favorable the situation would be for the defendant.

The trial court instructed the jury in part as follows: "You are instructed that the Statutes of the State of Nebraska in force and effect at the time of the accident involved herein provided, in substance, that in any criminal prosecution for a violation of the law relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's body fluid at the time alleged, as shown by chemical analysis of the defendant's blood, shall give rise to the following rebuttable presumptions: 1) If there was 0.05 per cent or less, by weight, of alcohol in the defendant's body fluid, it shall be presumed that the defendant was not under the influence of intoxicating liquor at the time the specimen was obtained; 2) If there was, at that time, in excess of 0.05 per cent, but less than

0.15 per cent, by weight, of alcohol in the defendant's body fluid, such facts shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor; but such fact may be considered, with other competent evidence, in determining the guilt or innocence of the defendant; and 3) If there was 0.15 per cent or more, by weight, of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor at the time the specimen was taken."

It was clearly the purpose of the statute, section 39-727.01, R. R. S. 1943, upon which the foregoing instruction was based, to provide a fixed standard by which a presumption of intoxication arose. It is an attempt to substitute scientific determination for objective tests and superficial opinion in that part of the field where it can be safely done. The standard provided is the amount of alcohol in the defendant's body fluid at the time alleged, as shown by chemical analysis. This statute creates a presumption in derogation of the common law and it should therefore be strictly construed. State v. Resler, 262 Wis. 285, 55 N. W. 2d 35. "If an affirmative statute, which is introductory of a new law, direct a thing to be done in a certain manner, that thing shall not, even though there are no negative words, be done in any other manner, the mode prescribed by statute for the exercise of a power, must be adopted. In some cases, a strict, and even literal, compliance is required. This is particularly true in regard to enactments modifying the course of the common law." 50 Am. Jur., Statutes, § 19, p. 40.

The general rule governing the testing of body fluids with relation to intoxication is stated in an annotation in 159 A. L. R. 210 in the following language: "From the cases generally, it is apparent that, subject to compliance with conditions as to relevancy in point of time, tracing and identification of the specimen, accuracy of the analysis, and qualification of the witness

as an expert in the field, there is rather general agreement that where the prosecution in a criminal case seeks to establish the intoxication of the accused, evidence as to the obtaining of a specimen of his body fluid at or near the time in question, evidence as to the alcoholic content of such specimen, as determined by scientific analysis, and expert opinion testimony as to what the presence of the ascertained amount of alcohol in the blood, urine, or other body fluid of an individual indicates with respect to the matter of such individual's intoxication or sobriety, is ordinarily admissible as relevant and competent evidence upon the issue of intoxication, at least where the accused voluntarily furnished the specimen for the test, or submitted without objection to its taking." See, also, Annotation 127 A. L. R. 1514. This rule applied before the enactment of any statutory law on the subject. Kuroske v. Aetna Life Ins. Co., 234 Wis. 394, 291 N. W. 384, 127 A. L. R. 1505.

It seems clear to us that the evidence of Dr. Levine was properly admissible as bearing upon the question as to whether or not the defendant was intoxicated at the time charged. Whether the trial court erred in instructing the jury regarding the presumption of intoxication as set forth in section 39-727.01, R. R. S. 1943, presents quite a different question.

The historical background of section 39-727.01, R. R. S. 1943, which has been adopted in substance by many states, is set forth in Toms v. State (Okl. Cr.), 239 P. 2d 812. It is therein pointed out that much alarm has been expressed by the legal profession in regard to statutes fixing a formula for determining intoxication by testing body fluids when there is such a degree of variability in humans. It is there stated, accompanied by the citation of ample medical and legal authority, that impairment sufficient to adversely influence driving ability is demonstrated quite clearly in the average individual at alcoholic concentrations of 0.09 percent to 0.11 percent in the blood. The court then states that

the establishment of 0.15 percent as the presumption limit allows sufficient tolerance for individual variation. Consequently the fixing of 0.05 percent and below as creating a presumption of nonintoxication, and the fixing of 0.15 percent and above as creating a presumption of intoxication, affords full protection against individual variation to those submitting to the test. Between these two fixed points a test creates no presumption, although it is properly admissible along with the evidence of an expert to show the condition of the subject as to being intoxicated, according to the express wording of section 39-727.01, R. R. S. 1943. Such evidence is for the jury to consider without the benefit of any statutory presumption.

It seems clear to us, however, that the language of the statute must be strictly followed and that the presumption of intoxication created by it does not exist unless the blood test shown by the chemical analysis amounts to or exceeds 0.15 percent. In the present case the blood test showed 0.11 percent of alcohol. This was an insufficient amount to create a presumption of intoxication, although it was otherwise competent to submit to the jury upon the question of defendant's alleged intoxication. It was a proper subject of expert testimony, but it could not rise to the dignity of a presumption under the statute.

If the statute is not so construed, the attempt of the Legislature to substitute scientific certainty for guess, estimate, or opinion would be defeated. The presumption was intended to rest on scientific certainty, free of additional evidence upon which disagreement might well arise. The two experts were entitled to testify the same as in any case calling for expert opinion evidence insofar as it was material to the issue. But their evidence is immaterial to any presumption contained in the statute when the chemical analysis was determined. When it is shown that the test was properly

made, the chemical analysis alone determines the provision of the statute that is applicable.

The trial court erred in giving parts (1) and (3) of the instruction hereinbefore designated for the reason that there was no competent evidence upon the subject.

It was therefore prejudicial error for the trial court to instruct in regard to any presumption of intoxication arising under the statute under the undisputed facts in the case. The judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.