JONATHAN BOUTILIER, PERSONAL REPRESENTATIVE OF THE ESTATE OF LAURA DIANE CONWAY BOUTILIER, DECEASED, APPELLANT, V. LINCOLN BENEFIT LIFE INSURANCE COMPANY, A NEBRASKA CORPORATION, APPELLEE.

681 N.W.2d 746

Filed June 25, 2004.   No. S-03-429.

Maren Lynn Chaloupka and Robert Paul Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for appellant.

Gary J. Nedved, of Keating, O'Gara, Davis & Nedved, P.C., L.L.O., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Jonathan Boutilier, as personal representative of the estate of Laura Diane Conway Boutilier, his deceased wife, appeals the district court's order granting the motion for summary judgment of appellee, Lincoln Benefit Life Insurance Company (LBL). The court determined that a temporary life insurance policy on

Laura had lapsed. The court also excluded parol evidence of statements made by the agent who sold the policy to show that the time the policy was in effect had been extended. We affirm because Laura died after the temporary insurance agreement terminated and thus there was no coverage.

## BACKGROUND

On October 17, 2000, the Boutiliers applied for a life insurance policy through Theodore R. Ziegler, an agent for LBL. According to Jonathan, Ziegler told them that to have immediate coverage under a temporary policy, they needed to submit a check for $50 and complete an application. The Boutiliers gave Ziegler a check, which was cashed by LBL. Jonathan contends that Ziegler represented to them that the temporary coverage was in effect immediately.

Ziegler left a receipt and temporary insurance agreement (TIA) with the Boutiliers. The TIA stated:

**When Temporary Insurance Starts**

If a first modal premium payment has been accepted by us and if Part I of the application has been completed on or before the date of this Agreement, temporary insurance under the Agreement will start on the date of this Agreement on all persons proposed for insurance except that:

If the answer to Question (G) Section VIII in the application is YES, insurance on all persons proposed for insurance through the application will start when all medical exams and lab tests on each person named in No. (G) in Section VIII are completed.

**When Temporary Insurance Will Stop**

Temporary insurance under this Agreement will stop on the first of the dates below:

1. The date we notify the Owner that we have stopped considering the application. We have an absolute right to so stop.

2. The date we notify the Proposed Insured that a medical exam and lab test is required (other than any exams and lab tests referred to in Question G, Section VIII), in which event insurance will stop with respect only to the person(s) required to have a medical exam and lab test . . . .

. . . .
   *5. Sixty days from the date of this Agreement . . . .*
(Emphasis supplied.)

Question (G), section VIII, of the application asked, "Has anyone to be considered been advised they need to have an exam or lab test for this insurance?" The question was answered "Yes" on the application. Ziegler filled out the application after meeting with the Boutiliers and did not give them a copy, but did leave a copy of the TIA. According to Jonathan, Ziegler stated that to obtain a permanent policy, the Boutiliers had to undergo medical examinations and laboratory tests. However, according to Jonathan, Ziegler also represented that the temporary policy was in effect immediately and would be in effect until the examinations and permanent policy were completed. LBL received the results of Laura's medical examinations and laboratory tests on December 19, 2000; on December 21, Laura died. No results were submitted for Jonathan.

LBL sent a letter denying coverage under the TIA, stating: "Our records indicate that the first modal premium payment was $112.20. The amount of the premium submitted was $50.00. Therefore, the requirement of providing a first modal premium payment was not satisfied." The letter continued:

> The application for insurance was completed October 17, 2000. The tragic death of your wife occurred on December 21, 2000. At the time of your wife's death, 65 days had elapsed from the completion of the application for insurance. Therefore, under the provisions of the [TIA], any coverage provided under the [TIA] would end.

Jonathan filed a petition seeking a declaratory judgment. The district court granted LBL's motion for summary judgment, finding that there was no coverage under the policy and that Jonathan could not use parol evidence to show that Ziegler's representations changed the written policy language. Jonathan appeals. We granted Jonathan's motion to bypass.

## ASSIGNMENT OF ERROR

Jonathan assigns that the district court erred by granting LBL's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *City of Lincoln v. PMI Franchising*, 267 Neb. 562, 675 N.W.2d 660 (2004).

The meaning of an insurance policy is a question of law, which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004).

## ANALYSIS

Jonathan contends that the TIA was in effect when Laura died because the policy started when Laura turned in her medical results and the TIA continued for 60 days from that time. He also argues that the contract is ambiguous and that the agent's representation acted to extend the time the TIA would run.

An insurance policy is to be construed as any other contract to give effect to the parties' intentions when the contract was made. When the terms of the contract are clear, the court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain meaning of the policy. *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998).

While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract. *Poulton v. State Farm Fire & Cas. Cos., supra.* Thus, we stated that a court may consider extrinsic evidence to determine the meaning of an ambiguous contract. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). But a contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003).

Jonathan argues that the contract is ambiguous because it is not clear when the insurance started and whether the 60-day expiration period was tolled by the delay in receiving the medical examination results and laboratory tests.

■ A contract, such as an insurance policy, is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. However, the fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Poulton v. State Farm Fire & Cas. Cos., supra.*

Here, regardless of any ambiguity about when temporary coverage started, we do not find an ambiguity in the "date of this Agreement." The TIA unambiguously stated that coverage would end "sixty days from the date of this Agreement," and the TIA was dated and signed on October 17, 2000. Nothing in the TIA suggests that the 60-day time period may be tolled. Thus, even if coverage did not start until Laura submitted her medical examination results and laboratory tests, it nevertheless terminated 60 days after October 17, which was before her death. See, *Radunz v. Farm Bureau Life Ins. Co.*, 431 N.W.2d 562 (Minn. App. 1988); *Sample v. Penn Mut. Life Ins. Co.*, 67 Fed. Appx. 379 (8th Cir. 2003) (unpublished); *Branton v. Western Reserve Life of Ohio*, 41 Fed. Appx. 40 (9th Cir. 2002) (unpublished) (concluding that similar termination clause ended coverage regardless of any ambiguity about when coverage started).

## CONCLUSION

We determine that the TIA terminated 60 days from October 17, 2000, the date of the agreement. Because Laura died after the TIA terminated, there was no insurance coverage.

AFFIRMED.

HENDRY, C.J., not participating.