CYNTHIA A. LOVETTE AND RICHARD D. LOVETTE, APPELLANTS,
V. STONEBRIDGE LIFE INSURANCE COMPANY, FORMERLY
KNOWN AS J.C. PENNEY LIFE INSURANCE COMPANY,
A STOCK COMPANY, APPELLEE.
716 N.W.2d 743

Filed July 14, 2006.    No. S-05-389.

Jeffrey F. Putnam, of Inserra & Kelley, for appellants.

(1)

Glen Th. Parks and Peter C. Wegman, of Rembolt Ludtke, L.L.P., for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Cynthia A. Lovette and Richard D. Lovette brought this action against Stonebridge Life Insurance Company (Stonebridge), formerly known as J.C. Penney Life Insurance Company, to recover as beneficiaries on an accidental death policy issued by Stonebridge to their son, Jason M. Lovette. Stonebridge refused payment, contending that an exclusion in the policy applied. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of Stonebridge and denied the Lovettes' motion. The Lovettes appeal from that final order. We find no error and affirm the judgment of the district court.

## FACTS

The case was submitted on stipulated facts. According to the stipulation, Cynthia and Richard are the parents and next of kin of Jason, who was born July 10, 1979. Jason purchased a life insurance policy from Stonebridge insuring his life for $100,000 against loss through accidental injuries. The certificate of insurance contained an exclusion which provided that "[n]o benefit shall be paid for Injury that . . . is caused by or results from the Covered Person's blood alcohol level being .10 percent weight by volume or higher."

Jason died on October 6, 2002, at approximately 3 a.m. in Wallace, Lincoln County, Nebraska, in a motor vehicle accident. The vehicle he was driving rolled over and pinned him underneath it. The certificate of death stated that the "IMMEDIATE CAUSE" of death was "Blunt Force Trauma," which was "DUE TO, OR AS A CONSEQUENCE OF [a] Motor Vehicle Accident." At the time of his death, Jason had a blood alcohol content of .27 grams per 100 milliliters of blood, which is equivalent to a blood alcohol level of .22 percent.

The accident occurred when Jason was backing his 1991 Honda Accord and attempted to make a moving 180-degree

turn. His vehicle entered the south ditch of Nebraska Highway 23. The right front corner of the vehicle struck the ditch, which caused the vehicle to flip onto its top. Jason was ejected through the open driver's-side window. The weather was clear, the asphalt road was level, and the pavement was dry. Investigating officers observed that Jason's face had been pressed into the mud by the weight of the vehicle. A V-shaped dent was visible on the driver's-side roof area that appeared to have been caused by Jason's body. An impact mark on the sunroof was consistent with an impact on the back of Jason's head. Investigating officers found several full, unopened bottles of beer lying in and around the vehicle. Investigating officers also detected a strong odor of alcoholic beverage on or about Jason.

A front seat passenger in Jason's vehicle told investigators that at the time of the accident, Jason had been rapidly accelerating backward, westbound, and was attempting to complete a 180-degree turn and continue westbound without stopping. The passenger told a bystander that the vehicle had been traveling approximately 50 to 55 miles per hour backward prior to the accident and told investigating officers that the vehicle was traveling approximately 30 to 35 miles per hour backward prior to the accident. No autopsy was performed.

The district court concluded that the "accident was caused at least in part by or resulted from [Jason's] blood alcohol level being over two times the legal limit." The court found that the policy exclusion thus applied, and the court granted summary judgment in favor of Stonebridge. The Lovettes filed this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

The Lovettes assign that the district court erred in finding that the policy exclusion applied and erred in granting Stonebridge's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine

issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006); *Andres v. McNeil Co.*, 270 Neb. 733, 707 N.W.2d 777 (2005). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Andres v. McNeil Co., supra; Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005).

■ The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the trial court. *Molina v. American Alternative Ins. Corp.*, 270 Neb. 218, 699 N.W.2d 415 (2005); *Chief Indus. v. Great Northern Ins. Co.*, 268 Neb. 450, 683 N.W.2d 374 (2004).

## ANALYSIS

■ The issue presented is whether the exclusion contained within the policy prohibits the Lovettes from recovering against Stonebridge. Familiar general principles guide our analysis of this issue. An insurance policy is to be construed as any other contract to give effect to the parties' intentions when the contract was made. *Boutilier v. Lincoln Benefit Life Ins. Co.*, 268 Neb. 233, 681 N.W.2d 746 (2004). When the terms of an insurance contract are clear, the court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Id.* In such a case, a court shall seek to ascertain the intention of the parties from the plain meaning of the policy. *Id.*

The policy provides that "[n]o benefit shall be paid for Injury that . . . is caused by or results from the Covered Person's blood alcohol level being .10 percent weight by volume or higher." The Lovettes argue that this language is not satisfied by the mere fact that Jason was intoxicated at the time of the accident. Instead, they contend that the language of the exclusion unambiguously requires a "causal connection" between Jason's "blood alcohol weight," or his intoxication, and the injuries he suffered. Brief

for appellants at 6. They contend that such a connection is not present in this action because the uncontroverted evidence is that Jason's death was caused by "blunt force trauma" as a result of a motor vehicle accident. *Id.*

We agree that the plain language of the policy exclusion requires the insurer to show a causal connection between the decedent's blood alcohol level and the accident in which the fatal injuries were sustained. See *Bankers Life & Cas. Co. v. Jenkins*, 547 S.W.2d 237 (Tenn. 1977). However, the Lovettes view the connection too narrowly by focusing on the ultimate cause of death and disregarding the circumstances that led up to the motor vehicle accident that resulted in Jason's death. The unambiguous language of the policy does not require that the intoxication, or blood alcohol weight, be the sole cause of the death in order to trigger the exclusion. Rather, the language requires only that the intoxication be a cause of a fatal event. See, *Ober v. CUNA Mut. Soc.*, 645 So. 2d 231 (La. App. 1994); *Bankers Life & Cas. Co. v. Jenkins, supra*; *Richard v. American Home Assurance Company*, 318 So. 2d 613 (La. App. 1975). Thus, where death results from a vehicular accident, the insurer need not eliminate all other possible causes of the accident to invoke the policy exception, as long as it demonstrates that the insured's blood alcohol level is causally related to the accident.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005); *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004). To meet this burden, Stonebridge was required to produce evidence from which a finder of fact could reasonably infer that Jason's blood alcohol level was a cause of his death. We note that in some reported cases where an insurer has successfully invoked a similar exclusion in circumstances where the insured was operating a motor vehicle at the time of death, the evidence includes expert testimony correlating blood alcohol level with impairment. *Ober v. CUNA Mut. Soc., supra*; *Bankers Life & Cas. Co. v. Jenkins, supra*; *Richard v. American Home Assurance Company, supra*. In at least one case, however, causation was established without

expert testimony. *Morgan v. Fortis Benefits Ins. Co.*, 107 P.3d 267 (Alaska 2005). The record in this case does not include expert opinion evidence that Jason's blood alcohol level resulted in impairment which was causally related to the fatal motor vehicle accident, and the parties have not briefed or argued whether an inference of causation can be drawn in the absence of such evidence.

Under a prior version of Nebraska's driving under the influence statute, this court held that a statutory presumption of intoxication arising from a specific blood alcohol level was in derogation of common law and therefore was applicable only to driving under the influence prosecutions. See *Hoffman v. State*, 160 Neb. 375, 70 N.W.2d 314 (1955). In *Raskey v. Hulewicz*, 185 Neb. 608, 616, 177 N.W.2d 744, 749-50 (1970), a personal injury case arising out of a motor vehicle accident, we first held that the trial court had properly excluded the results of a blood alcohol test because of insufficient foundation, and we then stated that the test results would have been inadmissible in any event because the "percentage of the alcohol content of the body fluids of a defendant in a civil matter is relevant, in the absence of a presumption, only when accompanied by expert opinion evidence of the effect thereof."

We do not regard this dictum in *Raskey* as establishing a bright-line rule that expert testimony is always necessary in a civil case to establish a causal relationship between a motorist's blood alcohol content and a motor vehicle accident which results in personal injury or death. In other circumstances where we have held that expert testimony is generally necessary to prove a fact, we have recognized exceptions. For example, although expert testimony is generally required to prove professional negligence, we have held that such testimony is not essential in circumstances where the recognition of the alleged negligence may be presumed to be within the knowledge of a layperson. *Boyd v. Chakraborty*, 250 Neb. 575, 583, 550 N.W.2d 44, 49 (1996) ("[i]n sum, this case involves the leaving of a foreign object, namely, a tube fragment, in a patient's body, which fragment should have been removed by an act understandable by the jury without technical evidence. . . . This is within the realm of knowledge of laypersons"); *Swierczek v.*

*Lynch*, 237 Neb. 469, 478, 466 N.W.2d 512, 518 (1991) ("[i]t is within the common knowledge and experience of a layperson to determine that an individual does not enter the hospital for extraction of her teeth and come out with an injury to nerves in her arms and hands, without some type of negligence occurring"). Similarly, we have stated that "where injuries are objective and the conclusion to be drawn from proved basic facts does not require special technical knowledge or science, use of expert testimony is not legally necessary to establish the cause and extent of such injuries." *Storjohn v. Fay*, 246 Neb. 454, 461, 519 N.W.2d 521, 527 (1994), citing *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974).

In most circumstances in civil cases, expert testimony will be necessary to establish a causal relationship between a motorist's blood alcohol level and a fatal accident. This, however, is an exceptional case. There is undisputed evidence that Jason, the insured, with a blood alcohol level of .22 percent, was operating a motor vehicle backward on a public highway at 3 a.m. at a speed of 30 to 55 miles per hour in an attempt to make a moving 180-degree turn and that he was ejected from the vehicle when it struck a ditch and flipped over, resulting in fatal injury. It is within the general knowledge of laypersons that a blood alcohol level of more than twice the legal limit impairs physical and mental faculties, and thus, a fact finder could infer, without expert testimony, that Jason's blood alcohol level was causally related to the manner in which his fatal accident occurred. By establishing these facts, Stonebridge met its prima facie burden of producing enough evidence to demonstrate that it would be entitled to judgment if the evidence were uncontroverted at trial. See, *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005); *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004).

■ The burden then shifted to the Lovettes to produce evidence showing the existence of a material issue of fact that would prevent judgment as a matter of law. See *id.* There is no evidence in the record suggesting an alternative cause for the accident or negating the inference of a causal relationship between the blood alcohol level and the fatal accidental injury. See *Morgan v. Fortis Benefits Ins. Co.*, 107 P.3d 267 (Alaska 2005).

Accordingly, the district court did not err in entering summary judgment in favor of Stonebridge and in denying the Lovettes' motion for summary judgment.

## CONCLUSION

For the reasons discussed, we affirm the judgment of the district court.

AFFIRMED.

WRIGHT, J., participating on briefs.