THOMAS E. ROGERS, APPELLEE, V. ARNE HANSEN,
D/B/A ARNE HANSEN VAN AND STORAGE COMPANY,
ET AL., APPELLEES,
AND MANAGEMENT, INC., A CORPORATION, APPELLANT.

317 N.W.2d 905

Filed April 2, 1982. No. 44281.

John R. Timmermier of Schmid, Ford, Mooney & Frederick, for appellant.

Robert G. Decker, for appellee.

Heard before BOSLAUGH, MCCOWN, CLINTON, and BRODKEY, JJ., and DEBACKER, D.J.

McCOWN, J.

This is a workmen's compensation case. The Workmen's Compensation Court on rehearing entered judgment for the plaintiff and against defendants Curtis Hansen, d/b/a Busy Bee Van and Storage Company; Arne Hansen, d/b/a Arne Hansen Van and Storage Company; and Management, Inc. The defendant Management, Inc., has appealed. The issue on appeal is whether Management, Inc., is liable as a statutory employer under Neb. Rev. Stat. § 48-116 (Reissue 1978).

The defendant Management, Inc., is the owner and manager of shopping centers in Omaha, Nebraska. In early 1980 Management, Inc., employed the defendant Curtis Hansen, d/b/a Busy Bee Van and Storage Company, to move the business and office equipment of the corporate offices of Management, Inc., from Ralston, Nebraska, to a new location at 42nd and Center Streets in Omaha, Nebraska. A letter bid by Busy Bee, accepted by Management, Inc., by telephone, constituted the only written memorandum of the agreement. Management, Inc., did not require Busy Bee to procure a policy of insurance to guarantee payment of workmen's compensation.

On February 29, 1980, the plaintiff was directed by a state employment agency to the offices of Arne Hansen Van and Storage Company, where he was employed as temporary help, and taken to the premises of Management, Inc., in Ralston. Shortly after plaintiff began work on the job of moving the Management, Inc., office furniture and equipment, he slipped on a ramp and broke his hip. There is no dispute that plaintiff was injured in an accident that arose out of and in the course of his employment.

The defendants Hansen operated the two moving companies out of the same location in Omaha, Nebraska, used much of the same equipment, and the same estimator. The Workmen's Compensation Court on rehearing found that both Hansen defendants were liable as employers. The evidence also established that neither Arne Hansen, d/b/a Arne Hansen Van and Storage Company, nor Curtis Hansen, d/b/a Busy Bee Van and Storage Company, had any policy of workmen's compensation insurance in force on the date of the accident to the plaintiff. The initial award of the Workmen's Compensation Court and the award on rehearing found Management, Inc., liable as a statutory employer under § 48-116.

The one-judge Workmen's Compensation Court awarded plaintiff compensation and medical expenses against the defendants Curtis Hansen, d/b/a Busy Bee Van and Storage Company, and Management, Inc., and a judgment for waiting time and an attorney fee against Busy Bee. Management, Inc., applied for rehearing. On rehearing, the Workmen's Compensation Court generally affirmed the judgment of the one-judge court, but modified it by entering the judgment for compensation and medical expenses against all three defendants jointly and severally, including specific provisions as to future surgery and possible additional temporary and permanent disability, and also assessed an attorney fee against Management, Inc., as the appealing employer. Management, Inc., has appealed to this court.

Management, Inc., contends that it should not be held liable as a statutory employer under § 48-116, and argues that *Sherlock v. Sherlock,* 112 Neb. 797, 201 N.W. 645 (1924), should be overruled. Management, Inc., contends that it was not in the business of moving office furniture and equipment, that Busy Bee was an independent contractor, and that the transportation of the office furniture and equipment

of Management, Inc., was not in the usual course of its business.

Section 48-116 provides: "Any person, firm or corporation creating or carrying into operation any scheme, artifice or device to enable him, them or it to execute work without being responsible to the workmen for the provisions of this act, shall be included in the term employer, and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of this act. This section, however, shall not be construed as applying to an owner who lets a contract to a contractor in good faith, or a contractor, who, in good faith, lets to a subcontractor a portion of his contract, if the owner or principal contractor as the case may be, requires the contractor or subcontractor, respectively, to procure a policy or policies of insurance from an insurance company licensed to make such insurance in this state, which policy or policies of insurance shall guarantee payment of compensation according to this act to injured workmen."

In the *Sherlock* case a corporation which was engaged in the wholesale drug business employed an independent contractor to paint exterior parts of the drug company's building. The contract required the independent contractor to hold the drug company harmless in the event of an accident to the contractor or any of his employees. The drug company did not obtain insurance for the protection of injured workmen, nor require the independent contractor to do so. The contractor employed his son, who was injured on the job. This court held that under the facts in that case the painting of the building owned and used by the drug company in conducting its business was work performed in the usual course of the trade or business of the drug company within the meaning of the workmen's compensation law. The court stated that the workmen's compensation law

did not separate the building used for the general purposes of the wholesale drug business from the stock of drugs for the purpose of determining what was done in the usual course of trade, and stated: "Plaintiff, when injured while painting, had he been employed directly by the corporation, would have been a person whose employment was 'in the usual course of the trade, business, profession or occupation of his employer.' " *Id.* at 801, 201 N.W. at 647. The court also held that by failing to require the independent contractor to procure insurance, the drug company had joined the independent contractor in a device to escape liability for compensation. There was no evidence as to whether the drug company knew or did not know that the independent contractor did not have workmen's compensation insurance.

Since the *Sherlock* case this court has reaffirmed on many occasions the rule that an owner who employs an independent contractor to do work which is in the usual course of business of the owner, and who fails to require the independent contractor to procure workmen's compensation insurance, is liable as a statutory employer under § 48-116. See, *Hiestand v. Ristau,* 135 Neb. 881, 284 N.W. 756 (1939); *Wilbur v. Adams Lumber Co.,* 140 Neb. 48, 299 N.W. 268 (1941); *Keith v. Wilson,* 165 Neb. 58, 84 N.W.2d 192 (1957).

Obviously, the work of a subcontractor is ordinarily within the usual course of business of the principal contractor, and we have specifically held that under the provisions of § 48-116, when a contractor fails to require a subcontractor to carry workmen's compensation insurance and an employee of the latter sustains a job-related injury, the contractor is a statutory employer and, with the immediate employer subcontractor, is jointly and severally liable to pay compensation under the terms of the Workmen's Compensation Act. *Duffy Brothers Constr.*

*Co. v. Pistone Builders, Inc.,* 207 Neb. 360, 299 N.W.2d 170 (1980).

Except in general terms, this court has seldom discussed the tests or standards for determining whether the work being done by an independent contractor for an owner was in the usual course of business of the owner. The broad language of § 48-116 makes it apparent that each case must be assessed on its own factual background.

One of the principal purposes of statutes such as § 48-116 is to prevent the evasion of compensation coverage by the contracting or subcontracting of the owner's or employer's normal work. The general test of applicability of such statutes is whether the work being done by the independent contractor would ordinarily be done by employees of the owner in view of the owner's past practices and the practices of employers in comparable businesses. See 1C Larson, Workmen's Compensation Law § 49 (1980). As Larson notes, the activities which produce most of the close cases are those peripheral and auxiliary operations, such as maintenance, construction, and delivery. What may be routine activity for a large business may be extraordinary for a small one, and the factual distinctions in individual cases are often critical. Larson states that the test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether the particular activity is, in that particular business, normally carried on through employees rather than independent contractors. 1C Larson, Workmen's Compensation Law § 49.12 (1980).

Although *Sherlock* did not discuss the evidence as to whether painting might have been done by employees under the conditions existing in 1924, it did hold that the burden was on the drug company to prove that the painting done was not in the usual course of trade or business of the drug company.

In the case now before us there was no evidence as

to whether employees of Management, Inc., had been used in the past to move furniture or equipment of tenants of its shopping centers or for moving furniture and equipment of Management, Inc., itself. There was no evidence to show that Management, Inc., did or did not have the equipment required for moving the offices of Management, Inc., nor that any special equipment was necessary. Neither was there any evidence that the transportation of office furniture and equipment from one office to another in the same local area by similar companies was ordinarily handled by employees or by independent contract. The estimate sheet prepared by Busy Bee, however, showed that Management, Inc., had pickups and would move calculators, chairs, typewriters, pictures, and planters, presumably with its own employees. Under that state of the record it cannot be said as a matter of law that the work here was not in the usual course of the trade or business of Management, Inc., within the meaning of § 48-116.

The determination by the Workmen's Compensation Court that Management, Inc., was a statutory employer under § 48-116 necessarily included a determination that the moving services contracted for by Busy Bee were in the usual course of the business of Management, Inc. Whether that determination was made in reliance on *Sherlock v. Sherlock,* or an interpretation of it, is beside the point. The Workmen's Compensation Court necessarily determined that the work was in the usual course of business of Management, Inc., and that determination was a factual one.

The findings of fact made by the Workmen's Compensation Court after rehearing have the same force and effect as a jury verdict and will not be set aside on appeal unless clearly wrong. In testing the sufficiency of the evidence to support findings of fact made by the Workmen's Compensation Court after rehearing, the evidence must be considered in the

light most favorable to the successful party. *Hilt Truck Lines, Inc. v. Jones,* 204 Neb. 115, 281 N.W.2d 399 (1979).

The joint and several liability imposed by § 48-116 is for the sole benefit of the injured workman. Between the statutory employer and the actual employer, the liability of the actual employer is primary and that of the statutory employer is secondary. Under the Nebraska Workmen's Compensation Act a statutory employer is entitled to indemnity from the actual employer for all amounts the statutory employer has been required to pay in satisfaction of a compensation award. *Duffy Brothers Constr. Co. v. Pistone Builders, Inc.,* 207 Neb. 360, 299 N.W.2d 170 (1980).

The judgment of the Workmen's Compensation Court on rehearing is affirmed. Plaintiff is allowed the sum of $1,000 as attorney fees in this court.

AFFIRMED.

BOSLAUGH and BRODKEY, JJ., concur in the result.