THE TRAVELERS INDEMNITY COMPANY, APPELLEE, V.
INTERNATIONAL NUTRITION, INC., APPELLANT.
734 N.W.2d 719

Filed July 13, 2007.   No. S-06-063.

James L. Quinlan, David J. Stubstad, and Russell A. Westerhold, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

CeCelia Ibson Wagner, of Smith, Schneider, Stiles & Serangeli, P.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

International Nutrition, Inc., acquired workers' compensation insurance from The Travelers Indemnity Company (Travelers) through the State of Nebraska's assigned risk program. Soon after the policy term began, Travelers changed International Nutrition's classification code and retroactively applied the change, which resulted in an increase in International Nutrition's premium payments. Travelers sued International Nutrition for failure to pay the premiums. The primary issue presented in this appeal is whether Travelers had the authority to change International Nutrition's classification code and retroactively apply the change.

## BACKGROUND

### Assigned Risk Program

The Nebraska Workers' Compensation Act[1] requires, with few exceptions, that every employer carry workers' compensation insurance.[2] For employers who cannot acquire such insurance on the open market, the State of Nebraska has established a workers' compensation insurance program that allows employers to obtain insurance coverage under the state's assigned risk program.[3] At all times relevant to this case, Travelers was under contract with the state to serve as the sole provider of workers' compensation coverage to employers required to use the assigned risk program.

Under the assigned risk program, an employer's premium payment is determined by, among other things, the employer's annual payroll and classification code. Classification codes are assigned based on the general nature of the employer's business. Different types of businesses involve different levels of risk, and as a result, different levels of premiums apply. The classification codes are promulgated by the National Council on Compensation Insurance, Inc. (NCCI), a rating organization licensed in Nebraska to make and file rules, rating values, classifications, and rating plans for workers' compensation insurance. Pursuant to Travelers' contract with the State of Nebraska, Travelers is required to use the classification codes, rates, filing data, and forms filed by the NCCI and approved by the Nebraska Department of Insurance.

Two manuals published by the NCCI are relevant to this case, the "Basic Manual," which, among other things, promulgates rules for insurers, and the "Scopes of Basic Manual Classifications" or "Scopes Manual," which lists and describes the classification codes. The NCCI Basic Manual provides that when a correction in a classification results in an increased premium, the correction is retroactively applied to the start of

---

[1] Neb. Rev. Stat. § 48-101 et seq. (Reissue 2004 & Cum. Supp. 2006).

[2] § 48-106.

[3] § 48-146.01.

the policy if the correction is made during the first 120 days of the policy.

### INTERNATIONAL NUTRITION

International Nutrition is a company involved in the production and sale of nutritional and medicated supplements to the livestock and poultry industries. International Nutrition receives bulk raw materials, such as rice hulls and limestone, which are stored in large holding storage areas. Supplemental products such as medications and vitamins are then mixed into the bulk raw material. After the mixing is complete, the finished product is packaged into both 25- and 50-pound bags. International Nutrition describes its manufacturing operation as "primarily one of mixing and packaging." The finished product is then sold to International Nutrition's customers, including feed manufacturers, animal food manufacturers, feedlots, egg operations, and poultry farms. International Nutrition's administrative procedures and manufacturing practices are regulated by the U.S. Food and Drug Administration.

International Nutrition was unable to obtain workers' compensation insurance on the open market and, as a result, submitted an application for coverage under the assigned risk program. In its application, International Nutrition provided its estimated annual payroll and indicated that the work performed by a portion of its employees fell under the NCCI's job classification code 4611. Classification code 4611 applies to employers "engaged in the compounding, blending or packing of drugs, medicines or pharmaceutical preparations."

Given this information, Travelers extended coverage to International Nutrition on March 16, 2001, by issuing a binder letter and manual. The binder letter explained that it was only a temporary insurance contract and that International Nutrition would be receiving its new policy in approximately 20 days, at which point the binder letter would be canceled.

Included with the binder letter was a 6-page manual prepared by Travelers. Section V of this manual, entitled "Premium Audits," stated:

> In accordance with policy provisions, and so that you pay only what you owe, audits are required for all workers' compensation policies to determine accurate premiums.

To confirm that your policy is priced accurately from the start, we may need to conduct a preliminary audit that involves a review of recent payroll and other business records within the first 90 days of coverage on new policies. If this is needed, an auditor will contact you to schedule a convenient time.

On March 22, 2001, Travelers sent a letter to International Nutrition's insurance agent, requesting a detailed description of International Nutrition's business. Travelers requested this information in order to verify that the classification codes listed on International Nutrition's application were correct. International Nutrition provided Travelers with a description of its business on April 4.

Travelers had issued the actual insurance policy to International Nutrition on March 30, 2001. Based on the information provided in International Nutrition's application, the policy included an estimated annual premium of $27,806 and classified a portion of International Nutrition's employees under classification code 4611.

The precise language of the policy will be set forth in greater detail below. Summarized, the policy provided that its terms could not be changed or waived except by endorsement. The policy further provided that the premiums would be determined by the relevant manuals. The policy explained that the work classifications in the policy were an estimate and that if they were inaccurate, then proper classifications would be assigned. The premium shown on the policy was also an estimate, and the final premium was to be determined later using the actual premium basis and proper classifications. The policy required International Nutrition to permit Travelers to audit its records and inspect its workplaces.

### CLASSIFICATION CODE CHANGE

On May 22, 2001, a loss control consultant from Travelers performed a "Loss Prevention and Engineering Survey" on International Nutrition. The purposes of this survey were "to gain a better understanding of [International Nutrition's] operations and to discuss [International Nutrition's] loss prevention activities." Following the survey, the loss control consultant prepared a written survey report which provided, among other

things, a description of International Nutrition's operations. Although similar to the description provided by International Nutrition on April 4, this description contained additional details relating to International Nutrition's operations. The description in the survey report did not contain any information contradicting the information provided by International Nutrition in its April 4 business description.

In light of International Nutrition's description of its business operations and the results of the loss prevention and engineering survey, Travelers decided to change International Nutrition's classification code from 4611 to 2014. Classification code 2014 applies to "insureds engaged in the operation of grist mills where grains such as wheat, oats, barley, rye, rice and corn are milled." Code 2014 also applies to "[t]he manufacture of feed or feed additives for livestock and poultry . . . ."

On June 18, 2001, Travelers informed International Nutrition's insurance agent that it was changing International Nutrition's classification code. Travelers explained that a preliminary audit would be ordered to verify that the classification code change was correct and that it would suspend billing for the endorsement until the audit was complete. Also on June 18, Travelers issued an endorsement to the policy that added classification code 2014 and resulted in an additional estimated premium of $65,285.

Travelers conducted the preliminary audit and on August 17, 2001, informed International Nutrition's insurance agent that the change from classification code 4611 to 2014 was correct. The preliminary audit also revealed that International Nutrition had significantly underestimated the payroll for employees initially classified under code 4611 in its original application. International Nutrition had estimated in its application that the annual payroll for employees classified under code 4611 was $549,000. However, the preliminary audit revealed that for these same employees now classified under code 2014, the payroll was actually $807,797. Travelers issued an endorsement reflecting these changes on August 17, the result of which was an additional estimated premium of $49,847.

International Nutrition disagreed with the change in classification code and on October 9, 2001, informed Travelers

that it had requested an NCCI inspection to verify the validity of the classification code change. Travelers agreed to suspend billing for the endorsement pending the outcome of the NCCI inspection. NCCI performed an onsite survey on October 31 and issued an "Inspection & Classification Report." The inspection report confirmed that classification code 2014 was the appropriate classification.

International Nutrition continued to dispute the change in classification code by sending various letters of protest to NCCI and Travelers. In spite of International Nutrition's letters, both NCCI and Travelers maintained that the change in classification code was correct. On March 9, 2002, Travelers canceled the policy for nonpayment of premiums. Travelers conducted a final audit and sent International Nutrition a demand for payment of a final premium of $113,571. International Nutrition paid Travelers $33,367 and also tendered a final premium payment of $26,110.38 that Travelers refused.

### DISTRICT COURT'S DECISION

Travelers sued International Nutrition for breach of contract and sought payment of $83,472, representing the unpaid premium balance. International Nutrition filed a counterclaim, seeking a declaratory judgment that it had no legal or equitable obligation to pay any additional amounts to Travelers, that Travelers breached the policy by retroactively changing the classification codes and increasing the premiums, and that Travelers engaged in unfair and deceptive acts in violation of the Consumer Protection Act.[4] The parties filed cross-motions for summary judgment.

The district court granted Travelers' motion for summary judgment and denied International Nutrition's motion. The court awarded Travelers $83,472, along with prejudgment interest. In granting Travelers' motion, the court concluded that Travelers' conduct did not constitute a breach of the policy because the plain and unambiguous policy language allowed Travelers to audit International Nutrition, change the classification code, and retroactively charge a higher premium. The

---

[4] Neb. Rev. Stat. § 59-1601 et seq. (Reissue 2004).

court further determined that the change in classification code was correct. In rejecting International Nutrition's counterclaim under the Consumer Protection Act, the court explained that there was no evidence showing that Travelers had engaged in unfair or deceptive acts or conduct. International Nutrition appealed.

## ASSIGNMENTS OF ERROR

International Nutrition assigns, consolidated, restated, and renumbered, that the district court erred in (1) overruling its motion for summary judgment and granting Travelers' motion for summary judgment; (2) determining that it breached the policy of insurance between it and Travelers; (3) determining that Travelers did not breach the insurance policy by retroactively applying the change in classification code and failing to conduct a preliminary audit, as set forth in the terms of the policy; (4) concluding that the clear and unambiguous language of the insurance policy allowed Travelers to rely on the NCCI Basic Manual; (5) finding that classification code 2014 is the correct classification code; (6) awarding Travelers a premium calculated pursuant to the assigned risk rate, as opposed to the open market rate, after changing the classification code; (7) finding that Travelers' conduct did not constitute a breach of its duty of good faith and fair dealing; (8) concluding that the Consumer Protection Act did not apply; and (9) awarding Travelers prejudgment interest.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[5] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[6]

---

[5] *City of Lincoln v. Hershberger*, 272 Neb. 839, 725 N.W.2d 787 (2007).

[6] *Id.*

## ANALYSIS

### Travelers' Authority to Retroactively
### Apply Classification Code Change

We begin with International Nutrition's argument that the district court erred in determining that the insurance policy granted Travelers the authority to retroactively apply the change in classification code and increase the premiums. International Nutrition argues that there are no provisions in the policy that expressly grant Travelers this authority and that the language in the policy on which the district court relied to support its conclusion is ambiguous and should have been construed against Travelers.

An insurance policy is a contract. In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made.[7] In construing an insurance contract, a court must give effect to the instrument as a whole and, if possible, to every part thereof.[8] While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract.[9] Guided by these principles, we agree with the district court and conclude that the provisions of the insurance policy issued to International Nutrition, when considered together, gave Travelers the authority to retroactively change International Nutrition's classification code and charge the resulting increased premium when the initial premium was based on an incorrect classification code.

The insurance policy expressly states that the initial premium is only an estimated premium. The policy, in part five, paragraph B, under the title "Classifications," provides that the rate and premium basis stated on the information page of

---

[7] *Olson v. Le Mars Mut. Ins. Co.*, 269 Neb. 800, 696 N.W.2d 453 (2005).

[8] *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000).

[9] *Boutilier v. Lincoln Benefit Life Ins. Co.*, 268 Neb. 233, 681 N.W.2d 746 (2004).

the policy is "assigned based on an estimate of the exposures [International Nutrition] would have during the policy period." That same paragraph further states that "[i]f your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy." Part five, paragraph E, under the title "Final Premium," provides that "[t]he premium shown on the Information Page, schedules, and endorsements is an estimate." This provision further explains that "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy."

Furthermore, the policy contains provisions under which Travelers is given the authority to perform inspections and audits to determine the correct premium to be charged. Part five, paragraph G, under the title "Audit," states that "[y]ou [International Nutrition] will let us examine and audit all your records that relate to this policy" and "[w]e [Travelers] may conduct the audits during regular business hours during the policy period and within three years after the policy period ends." This paragraph further explains that the "[i]nformation developed by audit will be used to determine final premium." Part six, paragraph A, entitled "Inspection," states that Travelers has "the right, but [is] not obliged to inspect [International Nutrition's] workplaces at any time." The paragraph further notes that these inspections are not safety inspections, but "relate only to the insurability of the workplaces and the premiums to be charged."

Travelers' insurance policy plainly stated that International Nutrition's initial premium was only an estimate and subject to change as a result of an audit or inspection performed by Travelers. The policy further stated that if International Nutrition's initial classifications were incorrect, Travelers would assign the proper classifications, rates, and premium basis through an endorsement to the policy. These provisions clearly and unambiguously gave Travelers the authority to retroactively change International Nutrition's classification codes and increase the premium payments when the initial premium

was based on what was later determined to be an incorrect classification code.[10]

■ We further conclude that the "Our Manuals" provision in Travelers' policy incorporated the NCCI Basic Manual into the policy. The law generally is that statutes in existence at the time of the execution of a contract become part of the contract as if set forth therein.[11] Accordingly, the policy at issue in this case must be read in light of § 48-146.01, pursuant to which Travelers entered into a binding agreement with the state to become the state's assigned risk insurer. Under this agreement, Travelers is obligated to use the classification codes, rates, filing data, and forms filed by the NCCI and approved by the Nebraska Department of Insurance. One of the documents, created by the NCCI and relevant to Travelers' insurance policy, is the NCCI Basic Manual. The NCCI Basic Manual clearly states that if a correction in a classification is effective "[d]uring the first 120 days of the policy term," then the correction is applied "[r]etroactively to the inception of the policy."

The insurance policy issued by Travelers provided that all premiums for the policy will be determined by "our manuals of rules, rates, rating plans and classifications." International Nutrition argues that this phrase is ambiguous and cannot be read to include the NCCI Basic Manual. International Nutrition contends that because the NCCI Basic Manual was not actually produced by Travelers, it cannot be considered one of "our manuals" under the plain language of the policy. We disagree.

International Nutrition's argument ignores the context in which the term is used in the policy and the legal framework in which the assigned risk program operates. Travelers does not have the authority to create and apply its own classification codes, rates, filing date, or forms. Rather, Travelers is obligated to use those filed by the NCCI and approved by the state. Because of this requirement, the "our manuals" provision in

---

[10] Compare, e.g., *Savant Ins. Ser. v. Central Oil and Supply*, 821 So. 2d 623 (La. App. 2002); *Great American Ins. Co. v. Nova-Frost, Inc.*, 362 N.W.2d 358 (Minn. App. 1985). See, also, *Nationwide Mut. Ins. v. Ed Soules Const. Co.*, 397 So. 2d 775 (Fla. App. 1981).

[11] *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986).

the policy cannot be understood without reference to the NCCI publications. And in any event, the 120-day provision from the NCCI Basic Manual simply supplements the clear language of the policy with respect to estimated and final premiums.

In sum, the insurance policy states that the initial premium was only an estimate and that a final, actual premium would be determined by an audit. The policy explained that the actual premium would be based on the proper classification codes and rates that lawfully apply. The policy explained that if the final premium was lower than the estimated premium, Travelers would refund the difference, but if the final premium was higher, International Nutrition would be billed for the difference. And finally, the policy incorporated the NCCI Basic Manual that explicitly provides Travelers the authority to correct classification codes and, if the correction is made within the first 120 days of the policy term, apply the correction retroactively. We conclude that the provisions of the insurance policy, when considered together, clearly and unambiguously grant Travelers the authority to make classification code corrections and retroactively apply the increased premiums.

The undisputed evidence in the record shows that Travelers notified International Nutrition of the change in classification code on June 18, 2001, which is 95 days after the policy took effect on March 15, 2001. Because Travelers made the classification code change within the first 120 days of the policy term, Travelers was entitled to apply the classification code change retroactively.

## TRAVELERS' FAILURE TO PERFORM PRELIMINARY AUDIT WITHIN 90 DAYS OF COVERAGE

International Nutrition contends that Travelers' failure to conduct a preliminary audit within the timeframe set forth in the binder manual resulted in a waiver of Travelers' right to change the classification code and retroactively increase the premiums. The binder manual, issued by Travelers on March 16, 2001, served as a temporary insurance contract until the actual policy was delivered. The binder manual provided, as previously stated, that to confirm that the policy was priced accurately, Travelers "may need to conduct a preliminary audit

that involves a review of recent payroll and other business records within the first 90 days of coverage on new policies." The binder manual further explained that "[i]f this is needed, an auditor will contact you to schedule a convenient time."

It is undisputed that Travelers did not conduct a preliminary audit within the first 90 days of coverage. However, contrary to International Nutrition's argument, Travelers' decision to not perform a preliminary audit did not result in a waiver of Travelers' right to conduct a later audit and change the classification code. The plain language of the binder manual clearly provides that the preliminary audit was discretionary.

Both the audit and the inspection clauses in the insurance policy grant Travelers the right to perform audits and inspections throughout the policy period. The audit clause states that International Nutrition "will let [Travelers] examine and audit all [its] records that relate to this policy" and that Travelers "may conduct the audits . . . during the policy period and within three years after the policy period ends." The inspection clause in the policy states that Travelers has "the right . . . to inspect [International Nutrition's] workplaces at any time" and that these inspections relate to "the insurability of the workplaces and the premiums to be charged."

We conclude that Travelers was not obligated to conduct a preliminary audit, and its decision not to do so did not waive Travelers' right under the policy to correct International Nutrition's classification code and retroactively apply the premium increase.

## NCCI Classification Code 4611 Versus Code 2014

We next address International Nutrition's contention that the district court erred in determining that code 2014, as opposed to code 4611, was the correct classification code. The relevant facts regarding International Nutrition's business description, as summarized above, are not in dispute.

The description for classification code 2014, as set forth in the NCCI Scopes Manual, provides in relevant part:

Code 2014 is applied to insureds engaged in the operation of grist mills where grains such as wheat, oats, barley, rye, rice and corn are milled.

> The classification contemplates the receiving and storage of the grain in grain elevators, storage bins and hoppers or warehouses. The processing operations involve the use of mechanical equipment to clean, mill, mix and package the finished grain. Equipment such as screens, separators, scrubbers and brushes, mechanical grinders or rolling mills, mixing hoppers and mechanical bagging or packaging machines are utilized.

> The manufacture of feed or feed additives for livestock and poultry is also covered under Code 2014. While the process generally involves grinding operations, there can be extensive mixing, blending and packaging operations.

Classification code 4611 provides in relevant part:

> Code 4611 is applied to insureds engaged in the compounding, blending or packing of drugs, medicines or pharmaceutical preparations. The Code 4611 risk does not manufacture any of the ingredients that comprise the foregoing but receives the ingredients from others along with other miscellaneous ingredients such as sugars, starches, oils, extracts, flavorings and colorings.

> . . . .

> Code 4611 operations may involve simple hand or machine mixing or blending where no chemical reaction processes are involved.

Although Travelers' auditor, in the final audit report, noted that International Nutrition's operations had characteristics of both classification codes, the auditor ultimately applied classification code 2014 to International Nutrition's payroll. International Nutrition contends that given its business operations and the foregoing classification code descriptions, the application of code 2014 was incorrect. International Nutrition argues that code 2014 is intended to apply to businesses " 'engaged in the operation of grist mills' " and to businesses involved in " 'the receiving and storage of the grain in grain elevators, storage bins and hoppers or warehouses.' "[12] International Nutrition emphasizes that it does not operate a grist mill, nor

---

[12] Brief for appellant at 33.

does it receive and store grain in elevators, bins, or warehouses. International Nutrition argues that code 4611 is the correct classification.

While International Nutrition's business operations do not fit perfectly into either classification code, we agree with Travelers, the NCCI, and the district court that the most accurate classification code for International Nutrition's business is code 2014. International Nutrition's argument for why code 2014 is not correct is primarily based on the fact that International Nutrition does not operate a grist mill or engage in the milling or grinding of grain.

However, as correctly noted by Travelers and the NCCI, code 2014 expressly applies to the "manufacture of feed or feed additives for livestock and poultry," which is an accurate description of International Nutrition's business. The undisputed evidence establishes that International Nutrition is involved in the production and sale of supplements to the livestock and poultry industries. Moreover, code 2014 states that "[w]hile the process generally involves grinding operations, there can be extensive mixing, blending and packaging operations." Although International Nutrition's process does not involve grinding, its manufacturing operation is "primarily one of mixing and packaging" which, as noted above, fits within the description of code 2014.

A classification analyst with the NCCI, in a letter to International Nutrition, gave an accurate explanation of why code 2014 is the correct classification. In his letter, he stated:

> Please note that while not every classification will fit every insured perfectly, classification seeks to find the one classification that best describes the business. We understand that your business does not engage in the grinding typically found in insureds assigned to Code 2014. However, your business does engage in extensive mixing and packaging that is typically found in insureds assigned to Code 2014. While both Codes 2014 and 4611 contemplate packaging, the packaging typically found in risks classified to 4611 is in small pharmaceutical quantities (like a bottle of pills) not in the bulk bags contemplated by Code 2014. We also understand that [your]

business manufactures feed additives and medicated feed for livestock.

Classification codes are intended to provide insurers with a categorical way of assessing the risks associated with providing workers' compensation coverage to employers. In this case, code 2014 is a more accurate description of International Nutrition's business as it relates to the duties and hazards faced by its employees. We conclude that the district court, as a matter of law, correctly determined that classification code 2014 is the proper classification code to be applied to International Nutrition.

### Open Market Rate Versus Assigned Risk Rate

International Nutrition argues that in retroactively applying the increased premium, Travelers incorrectly applied the assigned risk rate instead of the lower open-market-based rate when calculating the premium payment. International Nutrition reasons that had Travelers originally assigned classification code 2014, International Nutrition could have obtained workers' compensation insurance on the open market and, as a result, paid a lower premium. Accordingly, International Nutrition claims that the lower, open-market-based rate should have been the rate used by Travelers. International Nutrition cites no authority for this contention, and we are not persuaded by its argument.

To suggest that Travelers should have applied the open-market-based rate as opposed to the assigned risk rate, as urged by International Nutrition, ignores the fact that once an insured has applied for coverage through the assigned risk program, the insurance provider is required to apply the assigned risk rates. As previously noted, pursuant to Travelers' contract with the state, Travelers was required to use the classification codes, rates, filing data, and forms filed by the NCCI and approved by the Nebraska Department of Insurance. Travelers did not have the option of applying any rate other than the assigned risk rates. International Nutrition applied for coverage through the assigned risk program, and that is what it received. International Nutrition's argument is without merit.

PREJUDGMENT INTEREST

International Nutrition argues that the district court erred in awarding prejudgment interest. Prejudgment interest may be awarded only as provided in Neb. Rev. Stat. § 45-103.02(2) (Reissue 2004),[13] and whether prejudgment interest should be awarded is reviewed de novo on appeal.[14] Prejudgment interest under § 45-103.02 is recoverable only when the claim is liquidated, that is, when there is no reasonable controversy as to either the plaintiff's right to recover or the amount of such recovery.[15] A two-pronged inquiry is required. There must be no dispute either as to the amount due or as to the plaintiff's right to recover, or both.[16]

International Nutrition argues that there was a reasonable controversy regarding Travelers' right to recover the retroactively assessed premiums. We disagree. Based on our analysis above, we conclude that Travelers' right to recover its unpaid premiums was established beyond reasonable controversy. The district court did not err in concluding that prejudgment interest should be awarded.

Our conclusion that Travelers had the authority, under the terms of the insurance policy, to retroactively apply the change in classification code is otherwise dispositive of this appeal. Therefore, we do not address International Nutrition's remaining assignments of error.

CONCLUSION

We conclude that given the plain and unambiguous language of the insurance policy and the application of the NCCI Basic Manual, Travelers had the authority to correct International Nutrition's classification code and retroactively apply the corresponding change in premium. Travelers did not breach the insurance contract, nor did it waive its right to change the classification code as a result of its decision not to

---

[13] *IBP, inc. v. Sands*, 252 Neb. 573, 563 N.W.2d 353 (1997).

[14] *Ferer v. Aaron Ferer & Sons*, 272 Neb. 770, 725 N.W.2d 168 (2006).

[15] *Id.*

[16] *Id.*

perform a preliminary audit within the first 90 days of coverage. Travelers did not use an incorrect premium rate when it applied the assigned risk rate to calculate International Nutrition's premium. And the district court did not err in awarding Travelers prejudgment interest. We, therefore, affirm the judgment of the district court.

AFFIRMED.