763 N.W.2d 86 (2009)
277 Neb. 446
Ann RICKERL, Appellant,
v.
FARMERS INSURANCE EXCHANGE, doing business as Farmers Insurance Group, Appellee.
No. S-08-188.
Supreme Court of Nebraska.
March 27, 2009.
*88 Michael F. Coyle and Todd C. Kinney, of Fraser Stryker, P.C., L.L.O., Omaha, for appellant.
Daniel P. Chesire and Sean A. Minahan, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

NATURE OF CASE
Ann Rickerl leased a Honda Civic. As required by the lease, Honda Lease Trust (Honda) was named as the assignee of title to the vehicle, and Rickerl purchased an automobile insurance policy for the Civic from Farmers Insurance Exchange (Farmers). Following an accident, Rickerl made a claim on the policy, requesting that the Civic be repaired. Farmers refused, instead paying the fair market value of the vehicle to Honda, the loss payee. Rickerl filed this breach of contract claim. The primary issue presented is whether the automobile insurance contract allowed Farmers the unilateral right to choose whether to repair or replace a vehicle.
We conclude that the loss payable provision here gives Farmers the unilateral right to decide whether to repair or replace the damaged Civic. Accordingly, we affirm the district court's judgment dismissing Rickerl's claim.

FACTS
Rickerl leased a Honda Civic. Honda was named as the assignee of title under the lease. At the time of the lease, the Civic was valued at $15,989.67. Rickerl *89 was required to make an initial payment of $1,805.92 and monthly payments of $251.17 for 35 consecutive months. The lease also required Rickerl to maintain automobile insurance and name Honda as the loss payee in the insurance policy. Rickerl purchased an automobile insurance policy from Farmers. The declarations page named Rickerl as the policyholder and Honda as the lien-holder. The declarations page also included a "Loss Payable Provisions" section which stated in part:
It is agreed that any payment for loss or damage to the vehicle described in this policy shall be made on the following basis:
(1) At our option, loss or damage shall be paid as interest may appear to the policyholder and the lienholder shown in the Declarations, or by repair of the damaged vehicle.
Later, Rickerl was involved in a car accident. Following the accident, a Farmers claim representative estimated that the cost of repairing Rickerl's Civic was approximately $8,549.40. The fair market value of the Civic was determined to be $12,997.00. Rickerl notified Farmers that she wanted the Civic repaired. Farmers refused and declared the Civic a total loss. Farmers then wrote a check to Honda only, in the amount of $12,961.62 as full payment for the Civic. Honda accepted the check, released the lien, and submitted the certificate of title to Farmers. Farmers sold the Honda Civic for salvage for $5,000. Farmers then issued a check to Rickerl for $321.32, Farmers' estimation of Rickerl's "equity" in the Civic.
Rickerl filed suit against Farmers, and both parties filed motions for summary judgment. The district court ruled that Farmers did not breach the insurance contract by paying Rickerl and Honda their interests in the Civic through separate checks and initially ruled that Rickerl was properly compensated for her interest in the Civic. The court later ruled, however, that Rickerl had no equity interest in the Civic and dismissed Rickerl's claim with prejudice. Rickerl appeals.

ASSIGNMENTS OF ERROR
Rickerl assigns, restated, that the district court erred in (1) finding that the loss payable provision of the Farmers insurance policy gave Farmers the unilateral right to choose whether to repair or replace a vehicle after an accident, (2) finding that Farmers did not breach the contract when it determined the amount of Rickerl's damages and sent separate checks to Rickerl and Honda, and (3) determining as a matter of law the issue of Rickerl's damages.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2]
The interpretation of an insurance policy is a question of law.[3] In re *90 viewing questions of law, an appellate court resolves the question independently of the lower court's conclusion.[4]

ANALYSIS
In support of her first assignment of error, Rickerl argues that the loss payable provision of the insurance contract is ambiguous and does not grant Farmers the right to choose to repair or replace the Civic.
An insurance policy is a contract, and its terms provide the scope of the policy's coverage.[5] Insurance contracts, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used.[6] When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them.[7] It should be read to avoid ambiguities, if possible, and the language should not be tortured to create them.[8] An ambiguity exists only when the policy can be interpreted to have two or more reasonable meanings.[9]
Here, the loss payable provision provides that
any payment for loss or damage to the vehicle described in this policy shall be made on the following basis:
(1) At our option, loss or damage shall be paid as interest may appear to the policyholder and the lienholder shown in the Declarations, or by repair of the damaged vehicle.
Rickerl argues that the phrase "at our option" only means that Farmers can choose to pay a lienholder or the insured. Rickerl suggests that the loss payable provision actually means that "`at our option, we [the insurance company] can pay a lienholder in addition to the policyholder if such lienholder has a right to the money.'"[10] Rickerl claims that this interpretation of the loss payable provision is consistent with the purpose of such provisions, to protect the rights of a secured creditor.
We read the loss payable provision, however, to unambiguously grant Farmers the option to pay the loss or damages, or to repair the vehicle. Here, the terms of the loss payable provision are clear, and therefore, we will accord them their plain and ordinary meaning. The phrase "at our option" followed by two distinct prepositional phrases joined together by the conjunctive word "or" unambiguously establishes an option to pay replacement value or repair the vehicle. Under the terms of the loss payable provision, any payment Farmers makes for the damaged Civic "shall be paid" to Rickerl and Honda as their interests appear on the declarations page. As an alternative, the loss payable provision also allows Farmers the option to "repair ... the damaged vehicle." In other words, the phrase "at our option" refers to the two options provided in the sentence: Either Farmers may pay the policyholder and lienholder, as their interests appear on the declarations page, *91 "or" Farmers may repair the damaged vehicle. The loss payable provision is not ambiguous.
In her second assignment of error, Rickerl argues that Farmers breached the contract when it unilaterally determined Rickerl's damages and improperly paid Rickerl and Honda through two separate checks. Rickerl asserts that the loss payable provision required that both the policyholder's and lienholder's names be on one check. But the provision only provides that "loss or damage shall be paid as interest may appear to the policyholder and the lienholder shown in the Declarations." The terms of the policy do not require the interests of the policyholder and lienholder to be paid via one check; rather, the policy requires only that both be compensated for their respective interests. Accordingly, Farmers did not breach the contract by paying Honda and Rickerl with two separate checks.
Finally, Rickerl argues that Farmers breached the insurance agreement by unilaterally determining Rickerl's interest in the Civic was $321.32. Rickerl, however, failed to provide any evidence that she had a monetary interest in the vehicle. In her reply brief, Rickerl points to two affidavits which she claims "described the money she had put into the vehicle since leasing it."[11] The affidavits indicated that Rickerl had made a down-payment of $1,805.92 and 20 monthly payments of $251.17. This evidence, however, does not prove that Rickerl had a monetary interest in the Civic. On the contrary, the record, specifically the lease agreement, indicates that Honda, not Rickerl, had a monetary interest in the Civic. The lease agreement expressly and repeatedly provided that Rickerl's payments were lease payments that did not confer a proprietary interest in the vehicle.
Furthermore, the issues in a given case will be limited to those which are pled.[12] Rickerl's operative complaint alleged that the policy had been breached by Farmers' refusal to repair the vehicle, not that the insurance policy had been breached by a failure to pay sufficient damages. Even had Rickerl provided evidence that she had a monetary interest in the Civic, that would not have been an issue of material fact, because Rickerl's complaint did not place that fact at issue. Because the pleadings do not place damages in dispute, Rickerl's final assignment of error is without merit.

CONCLUSION
For the reasons discussed above, we conclude that the district court properly granted Farmers' motion for summary judgment. Accordingly, we affirm.
AFFIRMED.
GERRARD, J., participating on briefs.
NOTES
[1] Borrenpohl v. DaBeers Properties, 276 Neb. 426, 755 N.W.2d 39 (2008).
[2] Id.
[3] Sayah v. Metropolitan Prop. & Cas. Ins. Co., 273 Neb. 744, 733 N.W.2d 192 (2007).
[4] Id.
[5] Id.
[6] Fokken v. Steichen, 274 Neb. 743, 744 N.W.2d 34 (2008).
[7] Thrower v. Anson, 276 Neb. 102, 752 N.W.2d 555 (2008); Peterson v. Ohio Casualty Group, 272 Neb. 700, 724 N.W.2d 765 (2006).
[8] Farm Bureau Ins. Co. v. Bierschenk, 250 Neb. 146, 548 N.W.2d 322 (1996).
[9] Fokken, supra note 6.
[10] Brief for appellant at 13.
[11] Reply brief for appellant at 5.
[12] Spanish Oaks v. Hy-Vee, 265 Neb. 133, 655 N.W.2d 390 (2003).