IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

T$_{RAVELERS}$ I$_{NDEMNITY}$ C$_O.$ v. T & S D$_{RYWALL}$

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

T$_{HE}$ T$_{RAVELERS}$ I$_{NDEMNITY}$ C$_{OMPANY}$, APPELLEE,
v.
T & S D$_{RYWALL}$ F$_{INISHING}$, I$_{NC.}$, APPELLANT.

Filed July 9, 2013.    No. A-12-833.

Appeal from the District Court for Douglas County: L$_{EIGH}$ A$_{NN}$ R$_{ETELSDORF}$, Judge. Affirmed.

Josh Henningsen and Christopher A. Sievers, of Timmermier, Gross & Prentiss, for appellant.

Robert J. Wonnell, of McAnany, Van Cleave & Phillips, P.A., for appellee.

I$_{NBODY}$, Chief Judge, and I$_{RWIN}$ and M$_{OORE}$, Judges.

M$_{OORE}$, Judge.

T & S Drywall Finishing, Inc. (T&S), acquired workers' compensation insurance from The Travelers Indemnity Company (Travelers). After the policy period terminated, Travelers audited T&S to determine the actual premium as provided by the policy. During this audit and the audit of the following policy period, Travelers concluded that T&S owed additional premiums because it had hired subcontractors that did not have workers' compensation insurance covering their employees. T&S disputed the increased premiums, and Travelers brought an action against T&S in the district court for Douglas County. Following a bench trial, the district court entered judgment in favor of Travelers. T&S challenges the finding that it is liable for additional premiums. Finding no error, we affirm the district court's decision.

FACTUAL BACKGROUND

T&S is a company involved in the business of drywall installation and finishing. However, it does not perform any of the actual installation or finishing work. Instead, T&S submits bids to general contractors and, upon having a bid accepted, assigns the installation and

finishing to various subcontractors. Other than its president and owner, Terry Winn, T&S has one other employee, Julie Schafer, who manages the office and handles the bookkeeping.

On February 17, 2005, T&S submitted an assigned risk application for workers' compensation insurance to Travelers through one of Travelers' agents. In its application, T&S disclosed that it subcontracted 100 percent of its work and indicated that it did not sublet any work without first having received a certificate of insurance from the subcontractor. Along with the application, T&S paid $750 as prepayment of its premium. This prepayment was later increased to $850. Upon receiving the application and premium, Travelers issued T&S a policy with an effective policy period beginning on February 19, 2005, and terminating on February 19, 2006. When this initial policy period expired, a renewal policy was issued with an effective date of February 19, 2006.

As permitted by the policy, Travelers audited T&S' records a few months after the first policy period expired to determine the actual policy premium due. During this audit, Travelers determined that T&S had contracted with a number of subcontractors that did not have their own workers' compensation insurance. Based on the information it received from the audit, Travelers also concluded that these subcontractors employed additional workers. Because these subcontractors did not have workers' compensation insurance covering their own workers, Travelers asserted that it had increased liability during the policy period because under Nebraska law these subcontractors' workers could have submitted claims under T&S' policy. As a result of this audit, Travelers adjusted T&S' final premium to $103,544.

Travelers also attempted to audit T&S' records during the renewal policy period, but T&S did not provide the necessary records. As a result, Travelers used the previous audit results to estimate T&S' premium for the partial renewal policy period. T&S continued to contest Travelers' revised policy premiums, and the policy was canceled on June 27, 2006. Travelers adjusted T&S' premium for the renewal period from February 19 to June 27, 2006, to $34,348. When T&S refused to pay the adjusted premiums, Travelers filed suit in the district court for Douglas County.

At trial, Rhonda Byers, a Travelers' premium auditor, testified to Travelers' workers' compensation premium audit process. She explained that the initial premium for a workers' compensation policy is an estimate based upon an insured's payroll projections for the policy period. The final premium is based upon an insured's actual payroll during the period. Because the final premium is based upon an insured's actual payroll, Travelers audits the insured's records after the policy has expired. To complete this audit and determine the final premium, Byers testified that Travelers reviews payroll records, certificates of insurance for any subcontractors, quarterly reports, federal 941 tax forms, and state unemployment quarterly reports.

Byers also described the process Travelers utilizes to calculate the final policy premium. Byers stated that the governing body for workers' compensation, the National Council on Compensation Insurance (NCCI), assigns classification codes based upon the type of work involved. According to Byers, each classification code has a different premium rate that is based upon the loss history for that classification code within a particular state. To determine the final premium, Travelers multiplies the insured's actual payroll for the policy period by the specific classification codes that pertain to the insured's operation.

Byers further explained Travelers' audit of T&S. Byers testified that Schafer informed Travelers during the audit that the subcontractors hired by T&S had additional employees on the jobsites. We also note that the interrogatory answers from T&S indicated that most of T&S' subcontractors have employees. Byers stated that Travelers charged T&S the additional premiums after the audits because T&S could not provide documentation showing that all subcontractors were covered by workers' compensation insurance policies. T&S only provided certificates of insurance for 2 of its 10 subcontractors. If T&S had provided certificates of insurance for all of its subcontractors, Byers testified that Travelers would not have charged the additional premiums.

Winn testified that he was instructed by Travelers' agent not to supervise, direct, or oversee any of its subcontractors. Because of these instructions, T&S intentionally did not determine whether the subcontractors had employees at a jobsite and did not determine how the subcontractors completed the work. T&S paid the subcontractors directly and did not issue payment to any employees of the subcontractors. According to Winn, the only way T&S would become aware that a subcontractor had employees was if the subcontractor submitted proof of workers' compensation insurance. However, there was no evidence presented to indicate that T&S required certificates of insurance from all of its subcontractors who had employees before subletting work.

After a bench trial, the district court entered judgment in favor of Travelers. At the outset, the court noted that the dispute is not whether the insurance agreement is an enforceable contract, but whether Travelers is entitled to the premium as calculated. The district court concluded that the policy language clearly provided Travelers the ability to conduct a postpolicy premium audit and required T&S to preserve the records necessary for such an audit. Finding that T&S failed to require its subcontractors to furnish proof of workers' compensation coverage for their employees, the court found that T&S became liable as an employer under Neb. Rev. Stat. § 48-116 (Reissue 2010). Because T&S intentionally failed to maintain the records necessary for an audit, the district court accepted Travelers' premium calculations. T&S was ordered to pay $137,892, along with any applicable prejudgment and postjudgment interest. T&S appeals from this order.

## ASSIGNMENTS OF ERROR

T&S asserts, restated and renumbered, that the district court erred by (1) finding that Travelers and T&S entered into a valid and enforceable contract, (2) concluding that Travelers was permitted to increase the premium after conducting its audit, and (3) accepting Travelers' retroactive premium calculation.

## STANDARD OF REVIEW

A suit for damages arising from breach of a contract presents an action at law. *Dutton-Lainson Co. v. Continental Ins. Co.*, 279 Neb. 365, 778 N.W.2d 433 (2010). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). An appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary

- 3 -

conflicts in favor of the successful party. *Id*. And that party is entitled to every reasonable inference deducible from the evidence. *Id*.

The interpretation of an insurance policy is a question of law. *Dutton-Lainson Co., supra*. In reviewing questions of law, an appellate court resolves the question independently of the lower court's conclusion. *Id*.

ANALYSIS

*Did Travelers and T&S Enter Into*
*Valid and Enforceable Contract?*

T&S contends that the insurance policy does not constitute a valid and enforceable contract. T&S argues that when it applied for insurance from Travelers, it never contemplated having to cover its subcontractors' workers under its own workers' compensation policy. T&S further claims that Travelers' agent stated that T&S would not be charged a premium for the subcontractors as long as they remained independent contractors. As a result, T&S contends there was no mutual understanding between the parties about what T&S was purchasing from Travelers and, therefore, no enforceable contract.

An insurance policy is a contract. *Rickerl v. Farmers Ins. Exchange*, 277 Neb. 446, 763 N.W.2d 86 (2009). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Waste Connections of Neb., supra*. A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Id*.

After our review of the record, we conclude that the insurance policies in question are clearly enforceable contracts. Travelers agreed to provide workers' compensation coverage for T&S for the operative periods in exchange for T&S' payment of the initial premiums. T&S accepted the policies and was insured during the policy periods until cancellation. The fact that T&S disputes its responsibility for additional premiums following the audits does not render the contracts unenforceable. In fact, this point was effectively conceded at trial when Winn admitted there was a policy in effect until T&S canceled its coverage after the audit. This assigned error is without merit.

*Is Travelers Permitted to Increase Premium*
*After Conducting Its Audit?*

Although providing little supporting argument for this assigned error, T&S asserts that Travelers should not be permitted to apply premium changes retroactively. Focusing on the Nebraska Supreme Court's decision in *Travelers Indemnity Co. v. International Nutrition*, 273 Neb. 943, 734 N.W.2d 719 (2007), T&S argues that Travelers' failure to introduce a copy of the NCCI basic manual into evidence precludes it from retroactively changing the premium.

In *International Nutrition*, Travelers performed a loss prevention and engineering survey on International Nutrition, Inc., during the first 120 days of the policy term to gain a better understanding of International Nutrition's operations. After completing this survey, Travelers changed International Nutrition's classification code. Travelers also concluded that International Nutrition had underestimated its payroll for the policy period. *Id*. These conclusions led

Travelers to adjust International Nutrition's policy premium. When International Nutrition refused to pay the increased premium, Travelers filed suit for breach of contract and had judgment awarded in its favor in the district court. *Id.*

On appeal, International Nutrition contended that Travelers did not have the authority to change International Nutrition's classification code during the policy period and retroactively apply the classification change to the premium. *Id.* The Nebraska Supreme Court rejected these arguments, concluding that the language of the insurance policy and the application of the NCCI basic manual provided Travelers with the authority to correct the classification code and retroactively apply the change to International Nutrition's premium. *Id.*

We conclude that, contrary to T&S' argument, *International Nutrition* actually supports the district court's decision that Travelers is permitted to make premium changes retroactively after the policy has terminated. The clear and unambiguous language of the Travelers' policy in this case, as was the case in *International Nutrition*, gives Travelers the authority to perform inspections and audits to determine the correct premium to be charged after the policy period ends.

As we noted above, an insurance policy is a contract. *Rickerl v. Farmers Ins. Exch.*, 277 Neb. 446, 763 N.W.2d 86 (2009). Insurance contracts, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used. *Id.* When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Id.*

In this case, the materials T&S received from Travelers, including the final policy, clearly explained that the initial premium was only an estimate. First, the section titled "Rating Information" on T&S' signed application specifies that the applicant is submitting an estimated annual premium. Second, the information pages T&S received from Travelers after submitting the application also clearly state that the initial premium is an estimate. Section 4 of the information pages explains that "the premium for the policy will be determined by our [Travelers'] Manuals of Rules, Classifications, Rates and Rating Plans. All required information is subject to verification and change by audit to be made annually."

Finally, the plain language of the insurance policy further provided that the final premium was to be determined after the policy ended. Specifically, paragraph E of part 5, under the title "Final Premium," provides:

> The premium shown on the Information Page, schedules, and endorsements is an *estimate*. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy.

Paragraph G of part 5 permits Travelers to conduct an audit of an insured's records in order to determine the final premium up to 3 years after the policy period ends. Based on these policy provisions, Travelers was clearly permitted to change T&S' premium after conducting an audit a few months after the policy terminated.

The fact that Travelers did not produce the NCCI basic manual does not change the analysis of this assigned error. The Supreme Court in *Travelers Indemnity Co. v. International*

*Nutrition*, 273 Neb. 943, 734 N.W.2d 719 (2007), found that Travelers' failure to produce the NCCI basic manual did not preclude it from adjusting its premium following its audit. Here, the district court did not err in finding that Travelers was permitted to conduct an audit after the policy period and adjust the premium based upon the audit's results.

*Did Travelers Properly Calculate*
*Retroactive Premium?*

T&S also argues that Travelers did not properly calculate the revised premium in this case. T&S contends that none of its subcontractors are employees of T&S and that Travelers did not provide any evidence to support its conclusion that these subcontractors had employees. Finally, T&S claims that it would be inequitable to allow Travelers to change the premium as it did because no claims were ever made under the policy.

Travelers argues that it was permitted to increase T&S' premium because it had increased risk exposure during the policy period due to T&S' having hired subcontractors with employees that were not otherwise covered by workers' compensation insurance. Travelers contends that Nebraska law dictates that these subcontractors' employees would have been covered under T&S' policy in the event of a workplace injury.

We find that Travelers' position regarding its exposure for these subcontractors' employees is well-supported in Nebraska's workers' compensation law. Section 48-116 provides:

> Any person, firm, or corporation creating or carrying into operation any scheme, artifice, or device to enable him or her, them, or it to execute work without being responsible to the workers for the provisions of the Nebraska Workers' Compensation Act shall be included in the term employer, and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of such act. This section, however, shall not be construed as applying to an owner who lets a contract to a contractor in good faith, or a contractor, who, in good faith, lets to a subcontractor a portion of his or her contract, if the owner or principal contractor, as the case may be, requires the contractor or subcontractor, respectively, to procure a policy or policies of insurance from an insurance company licensed to write such insurance in this state, which policy or policies of insurance shall guarantee payment of compensation according to the Nebraska Workers' Compensation Act to injured workers.

The Nebraska Supreme Court has long held that an employer who employs an independent contractor to do work which is in the usual course of business of the owner, and who fails to require the independent contractor to procure workers' compensation insurance, is liable as a statutory employer under § 48-116. *Rogers v. Hansen*, 211 Neb. 132, 317 N.W.2d 905 (1982); *Keith v. Wilson*, 165 Neb. 58, 84 N.W.2d 192 (1957); *Sherlock v. Sherlock*, 112 Neb. 797, 201 N.W. 645 (1924). The Supreme Court has also extended this rule to the contractor/subcontractor relationship. When a contractor fails to require a subcontractor to carry workers' compensation insurance and a subcontractor's employee sustains a job-related injury, the contractor may be a liable statutory employer. *Duffy Brothers Constr. Co. v. Pistone Builders, Inc.*, 207 Neb. 360, 299 N.W.2d 170 (1980).

On appeal, T&S does not dispute the above-cited law, but argues that Travelers did not prove that T&S was a statutory employer. In other words, T&S maintains that Travelers should have been required to affirmatively prove that the subcontractors had employees before charging the additional premium. This argument, however, also contradicts the policy's terms.

Part 5 of the policy, titled "Premium," contains the provisions utilized to determine the premium. Paragraph A, titled "Our Manuals," states that the premium for the policy is determined by Travelers' manuals for rates, rating plans, and classifications. Byers testified at trial that Travelers utilized the NCCI basic manual as one of its manuals to calculate the premium. Paragraph B, titled "Classifications," states that the rate and premium basis listed on the information page of the policy is determined based on an estimate of the insured's exposure during the policy. This paragraph also states that Travelers may adjust the classifications from the original estimates. Paragraph C, titled "Remuneration," explains that the policy premium is determined by multiplying a rate times a premium basis. The most common premium basis is remuneration. Remuneration consists of payroll and all other compensation paid or payable during the policy period for the services of:

1. All officers and employees engaged in work covered by this policy; and

2. All other persons engaged in work that could make [Travelers] liable under [provision of policy requiring Travelers to pay benefits required of T&S by workers' compensation law]. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

As stated above, Byers testified that Travelers utilized remuneration as the premium basis.

Because the remuneration premium basis requires the insurer to examine an insured's financial records, section 5 of the policy obligates the insured to maintain the necessary records. Paragraph F, under the title "Records," required T&S to maintain and provide the necessary information for Travelers to calculate the premium. Paragraph G, under the title "Audit," allowed Travelers to examine and audit "all [T&S'] records that relate to the policy." This paragraph continued:

These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium.

Based on this language, the policy clearly required T&S to maintain the necessary records to avoid incurring premium charges for its subcontractors, i.e., certificates of insurance from the subcontractors. Because T&S intentionally did not determine whether its subcontractors had employees working T&S' contract jobs and did not require all of its subcontractors to submit the insurance certificates, Travelers increased the premium based upon T&S' payroll and compensation records as permitted by the policy. Contrary to the assertion by T&S in its insurance application, T&S did not receive certificates of insurance for all of its subcontractors

before subletting work. Further, T&S admitted that its subcontractors had employees, both through its interrogatory answers and statements made by Schafer during the audit process. T&S in fact had certificates of insurance from two of its subcontractors, but failed to require such certificates from its remaining subcontractors.

T&S' position that Travelers should have to produce evidence that the subcontractors had employees not only ignores the policy language, but also the realities of workers' compensation insurance. Because of the ever-changing nature of a business, the policy premium for a workers' compensation policy usually cannot be determined until after the policy has expired. See 5 Steven Plitt et al., Couch on Insurance 3d § 69:16 (2012). For this reason, the insurer relies on the insured to maintain the necessary documentation for calculating the premium. If the insured does not maintain these records, the insurer cannot accurately determine its exposure during the policy. Therefore, T&S, not Travelers, bore the burden to establish that its subcontractors were adequately insured.

Finally, we find no support for T&S' argument that the premium adjustment is inequitable because no claim was ever filed against the policy, particularly since this is an action at law. As discussed above, and as is clear from the policy language, the final premium for T&S' workers' compensation insurance policy is determined by its payroll for these periods and was not affected by the amount of claims for this period. This assignment of error is without merit.

## CONCLUSION

In summary, we conclude that T&S and Travelers created a valid contract. The resulting insurance policy permitted Travelers to retroactively adjust the premium, and the district court did not err when it accepted Travelers' calculations for the judgment amount.

AFFIRMED.